**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 26 2003**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

ALBERT L. VAIL,

            Plaintiff-Appellant,

v.

JO ANNE B. BARNHART,
Commissioner, Social Security
Administration,

            Defendant-Appellee.

No. 02-5061
(D.C. No. 00-CV-976-J)
(N.D. Okla.)

ORDER AND JUDGMENT   *

Before **EBEL** , **HENRY** , and **MURPHY** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument.  Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore

ordered submitted without oral argument.

---

\*      This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff-appellant Albert Vail appeals from an order of the district court affirming the Social Security Administration's decision denying his application for Social Security disability and Supplemental Security Income benefits (SSI). This is Vail's second application for benefits as he seeks to be reevaluated in the course of degenerative diseases affecting his back and limbs. We have jurisdiction over this appeal under 42 U.S.C. § 405(g). Because the Social Security Administration did not support its reliance on the ambiguous testimony of the vocational expert with substantial evidence to conclude that there were jobs Vail could perform, we reverse and remand for further proceedings.

**Background**

In March of 1988, Vail injured his back on the job working as a meat cutter. On January 16, 1990, Vail filed his first claim for disability, alleging pain in his back, legs, arms, and shoulders. On November 29, 1991, the agency denied Vail's application. The agency affirmed that denial on reconsideration, and Vail was unsuccessful in overturning the agency's decision before an Administrative Law Judge (ALJ), and before a magistrate judge in the Northern District of Oklahoma. *Vail v. Dep't of Health and Human Servs.*, N.D. Okla., 92-C-0965-C, Sept. 22, 1994. Vail did not appeal further. As of December 31, 1993, the last date upon which Vail had insurance, he was fifty-four years old. 20 C.F.R.

-2-

§ 404.1563 (categorizing a 54-year-old claimant as closely approaching advanced age).

On October 8, 1996, Vail filed the instant claim for benefits alleging that, because his disability had become progressively worse since the Commissioner's decision in November 1991, his case for benefits should be considered anew. The agency denied Vail's new claim initially and on reconsideration. Vail appealed the agency's denial of his benefits to an ALJ.

On January 28, 1999, Vail received his *de novo* hearing before an ALJ. At the hearing, the ALJ posed a hypothetical to the vocational expert (VE) reiterating the limitations on Vail's abilities recognized by the agency in its November 1991 decision.[1] Hearing Tr., Aplt's App. at 288. Upon request for clarification from the VE, the ALJ specified twice that the person in this hypothetical would have to alternate sitting and standing as needed. *Id.* at 288-89. The VE testified in response that, if Vail had to be able to change positions as needed, there would be no jobs in the economy that he could perform. *Id.* at 289 (ALJ: "So with those restrictions here [there] would be no jobs?"; VE: "That's right.").

_____

[1] The ALJ cited the November 1991 decision as assuming that an individual was "limited to lifting 20 pounds occasionally, ten pounds frequently, [c]an stand or walk for six hours in an eight-hour day[,] and can stoop, only occasionally stoop[,] and needs to be allowed to alternate sitting and standing due to pain." Hearing Tr., Aplt's App. at 288.

The ALJ questioned the VE about why she had reached this conclusion when the November 1991 decision had found that jobs existed that Vail could perform. *Id.* The VE explained that a major limiting factor was the ALJ's reading of the November 1991 language to find that Vail would require changes of position as needed. *Id.* If Vail required changes of position "as needed," no jobs would be available to him.[2] *Id.* The VE also reported that typically the language "brief changes of position," would not imply "as needed." *Id.* at 288-89.

The ALJ then posited an alternate hypothetical with the same limitations except with brief changes of position not required "as needed." *Id.* at 289. In response, the VE stated that there would be jobs in the economy Vail could perform. *Id.* But, she added, a new employer would not be likely to make unspecified other accommodations Vail would require to work because he was over fifty years of age. *Id.* at 291-94. Moreover, Vail would only be able to work if he were to return to a job he had already held and had demonstrated that he could perform. *Id.* at 294.

On May 24, 1999, the ALJ issued a decision adopting the same substantive findings regarding Vail's limitations as the agency's November 1991 decision.

---

[2] VE: "Well, normally when someone says alternate sitting and standing, if they say with a brief change of position, then I would say yes, they could perform those jobs. If they go on to say the person has to be able to change positions as needed, then I would say they would be eliminated." Hearing Tr., Aplt's App. at 289.

Agency Slip Op., Aplt's App. at 24-25. Although the ALJ acknowledged that Vail suffered from degenerative disc disease, arthritis, and hypertension, he discounted evidence of the progression of these diseases. *Id.* at 19, 20-23. Vail then had only "severe impairments;" the ALJ did not consider Vail automatically disabled because his impairments did not meet or exceed a listed impairment in the Medical-Vocational Guidelines (the "grids"), 20 C.F.R. pt. 404, subpt. P, app. 2. *Id.* at 24. Nonetheless, the ALJ concluded that Vail could not return to his past relevant work as a meat cutter. *Id.* at 25.

Finally, the ALJ announced that Vail retained the residual functional capacity (RFC) to perform less than the full range of light work with brief changes of position. *Id.* Citing only the VE's testimony, the ALJ held that this meant Vail could perform unskilled light production labor (25,000 positions regionally and 281,000 positions nationally) and unskilled sedentary assembly work (20,000 positions regionally and 150,000 positions nationally). *Id.* at 24. The ALJ's decision did not specify, however, what timetable was implied in the "brief changes of position" Vail would require. *Id.* at 24-25. It also failed to discuss whether Vail could perform the jobs listed even if his changes of position were not "as needed" given that Vail was over the age of fifty and would not be returning to previous relevant employment. *Id.* at 24. The ALJ did, however, assert that his relevant hypothetical question to the VE "accurately depicted

claimant's vocational factors of age, education, past work, and residual functional capacity." *Id.* The Appeals Council denied review, so the ALJ's decision became the final decision of the Commissioner.

On appeal, the district court for the Northern District of Oklahoma approved the magistrate judge's report and recommendation to affirm the Commissioner's decision. The magistrate judge's report and recommendation had adopted two counterarguments to reconcile the gaps between the VE's testimony at the hearing and the ALJ's use of that testimony in his decision. Report and Recommendation, Aplt's Br., Ex. F at 18. First, the magistrate judge suggested that the only part of the VE's testimony that should be relevant to the agency's decision was her pronouncement that jobs existed in the economy that Vail could perform. *Id.* The magistrate judge discounted the VE's qualification of this pronouncement by noting that the agency had argued that it was not the Commissioner's burden to prove that an employer might actually accommodate Vail now that he was over fifty if jobs existed in the economy that Vail could perform under any circumstances. *Id.* Second, the magistrate judge wrote that the ALJ must have avoided the VE's flat pronouncement that no jobs existed in the economy in response to his initial hypothetical by assuming that Vail's required changes of position were "at will," as opposed to "as needed." *Id.*

On appeal, Vail argues both (1) that the ALJ erred in not recognizing that Vail's condition after November 1991 met or exceeded a listed impairment under the agency's guidelines so that he should automatically be considered disabled, and (2) that the ALJ failed to sustain his burden of proof at step five of the sequential evaluation process to establish that Vail could perform a job existing in substantial numbers in the regional and national economies. Because Vail's second argument is clearly dispositive, we address it first and need not reach his alternative argument. We agree that the ALJ failed to sustain his burden of proof at step five that there were jobs Vail could perform in the regional and national economies. We therefore reverse and remand for further proceedings.

### Standard of Review

We review the agency's decision to determine whether it supported its factual findings with substantial evidence and whether it applied the correct legal standards. *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1047 (10th Cir. 1993). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Fowler v. Bowen*, 876 F.2d 1451, 1453 (10th Cir. 1989) (quotations omitted).

Specifically, a record must "demonstrate that the ALJ considered all of the evidence," through "discussing the evidence supporting his decision, . . . the uncontroverted evidence he chooses not to rely upon, [and] significantly probative

-7-

evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). Unless an ALJ explicitly weighs all of the significantly probative evidence in a case, we cannot assess whether his decision was supported by substantial evidence as required. *Id.* at 1009; *see also* Social Security Act, 42 U.S.C. § 405(b)(1) (requiring that any "decision by the Commissioner of Social Security which involves a determination of disability and which is in whole or in part unfavorable to such individual shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based"). An ALJ must explain himself in his decision; "we are not in a position to draw factual conclusions on behalf of the ALJ." *Prince v. Sullivan*, 933 F.2d 598, 603 (7th Cir. 1991). We will not consider evidence substantial "if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

Finally, the agency must follow a five-step sequential evaluation process to determine whether a claimant is disabled. *Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988). The claimant bears the burden of establishing a prima facie case of disability at steps one through four. *Id.* at 751 n.2. If the claimant successfully meets this burden, the burden of proof shifts to the agency at step five to show that the claimant retains sufficient RFC to perform work in

the national economy, given his age, education and work experience. *Id.* at 751. Should an ALJ's decision not carry his burden of proof to show that there are jobs in the regional and national economies that the claimant can perform, we will reverse. *See, e.g., Nielson v. Sullivan*, 992 F.2d 1118, 1120-22 (10th Cir. 1993).

## Discussion

A vocational expert's testimony may provide a proper basis for an ALJ's determination at step five only when a claimant's impairments are adequately reflected in the hypotheticals posed to the expert. *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991). An ALJ is required to accept and to include in his hypothetical questions limitations supported by the record. *See Shepherd v. Apfel*, 184 F.3d 1196, 1203 (10th Cir. 1999).

Furthermore, if an ALJ finds that a claimant cannot perform the full range of work in a particular exertional category, an ALJ's description of his findings in his hypothetical and in his written decision must be particularly precise. For example, according to one of the agency's own rulings on sedentary labor, the description of an RFC in cases in which a claimant can perform less than the full range of work "must be specific as to the frequency of the individual's need to alternate sitting and standing." Social Security Ruling 96-9P, 1996 WL 374185 (S.S.A.) at *7. Precisely how long a claimant can sit without a change in position is also relevant to assumptions whether he can perform light work. 20 C.F.R.

§ 404.1567(b). Next, an ALJ must consider how the age of a claimant over fifty, along with his severe impairment, might seriously affect his ability to adjust to other work. 20 C.F.R. § 404.1563(d). Courts have generally recognized that the agency "faces a more stringent burden when denying disability benefits to older claimants." *Dikeman v. Halter*, 245 F.3d 1182, 1184 (10th Cir. 2001) (quoting *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990)). Finally, when a claimant can perform less than the full range of work in an exertional category, a vocational expert's testimony about what jobs he could perform becomes particularly valuable. *See, e.g., Talbot v. Heckler*, 814 F.2d 1456, 1465 (10th Cir. 1987).

We find that the ALJ in Vail's case did not support his decision with substantial evidence as it was his burden to do. *Nielson*, 992 F.2d at 1120-21. The ALJ's hypothetical questions to the VE lacked key information, and the ALJ's use of the VE's testimony in his final decision suffered from important gaps in analysis that do not permit us to review his reasoning. *Clifton*, 79 F.3d at 1009. Because we cannot draw conclusions on an ALJ's behalf, *Prince*, 933 F.2d at 603, we must reverse.

The record on appeal shows critical omissions in the ALJ's analysis. First, contrary to the ALJ's assertion in his decision, his hypothetical questions to the VE did not contain key facts that must inform the agency's conclusion. *Hargis*,

-10-

945 F.2d at 1492. The ALJ did not properly define how often Vail would need to change positions even "as needed," he did not establish that Vail was over fifty years of age, and he did not offer whether Vail would be able to return to previous relevant work. *See generally, e.g.,* *Ragland v. Shalala*, 992 F.2d 1056, 1058 (10th Cir. 1993) (noting that it is "very troubling" for an ALJ to not make specific findings regarding what it means for a claimant to have difficulty in maintaining a position).

Second, the ALJ failed to acknowledge in his decision whether and how he had evaluated the VE's negative responses to the hypothetical questions he posed. The ALJ omitted any reference to the VE's qualified responses, citing only to the statement the VE had made before qualification with necessary facts. When an ALJ fails explicitly to weigh all of the significantly probative evidence in a case, we cannot assess the merits of his decision and will find that it is not supported by substantial evidence. *Clifton*, 79 F.3d at 1009. We will not fill in critical gaps for an ALJ who has not provided substantial evidence for his conclusions. *Prince*, 933 F.2d at 603.

Finally, even if we were to accept, for example, the magistrate judge's report and recommendation's attempt to bridge the logical inconsistencies in the ALJ's decision, the ALJ still has not carried his burden of proof. Although the agency need not prove that a particular claimant will actually be hired for one of

the positions that it asserts exists in the regional or national economies, 20 C.F.R. § 404.1566(c)(7), an ALJ's "'finding that a claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that he can physically perform certain jobs; it also requires a determination that the claimant can *hold* whatever job he finds for a significant period of time.'" *Winfrey v. Chater*, 92 F.3d 1017, 1025-26 (10th Cir. 1996) (quoting *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994)). Not only did the ALJ's hypothetical question to the VE lack multiple pieces of critical information, but the VE's qualification of her statements in the record suggests that Vail may not actually be able to hold the positions the ALJ described because he would require accommodation not available to a claimant with his characteristics. *See also generally Dikeman*, 245 F.3d at 1184 (noting that the agency "faces a more stringent burden when denying disability benefits to older claimants" in recognition of the obstacles older claimants are likely to face adjusting to new work in the economy). The ALJ may not then be able to rely even on the selected pronouncement in the VE's testimony as an affirmative statement that there were jobs in the economy that Vail could perform. *Id.*; 20 C.F.R. § 404.1520(f) ("If you cannot do any work you have done in the past . . . we will consider your residual functional capacity and your age, education, and

past work experience to see if you can do other work.  If you cannot, we will find you disabled.").

## Conclusion

We conclude that the ALJ failed to carry his burden at step five of the sequential evaluation process, and that substantial evidence does not support the agency's decision.    *Williams* , 844 F.2d at 751.  We REVERSE the judgment of the United States District Court for the Northern District of Oklahoma, and we REMAND to the district court for it to remand to the agency for further proceedings.  The agency's proceedings should either more fully explain the ALJ's decision or award benefits.

Entered for the Court

Robert H. Henry
Circuit Judge