FILED
United States Court of Appeals
Tenth Circuit

January 10, 2012

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

JUDY SHIPLETT,

          Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security
Administration,

          Defendant-Appellee.

No. 10-7079
(D.C. No. 6:09-CV-00316-RAW-KEW)
(E.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **TYMKOVICH** and **BALDOCK**, Circuit Judges, **BRORBY**, Senior
Circuit Judge.

Plaintiff-appellant Judy Shiplett appeals from an order of the district court

affirming the Commissioner's decision denying her application for Social Security

disability.  She argues that the decision of the Administrative Law Judge (ALJ),

specifically, his determination she had the residual functional capacity (RFC) to

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel.  It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

perform sedentary work with some limitations, was not supported by substantial evidence. We have jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C. § 405(g) and, for the reasons set forth below, we affirm.

Ms. Shiplett filed for these benefits on February 29, 2008, alleging a September 16, 1997, back injury left her disabled. Because she last met the insured status requirements of the Social Security Act on December 31, 2002, she must prove she was totally disabled prior to that date. *See Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 360 (10th Cir. 1993). The agency denied her applications initially and on reconsideration. On February 24, 2009, Ms. Shiplett received a de novo hearing before an ALJ. The Commissioner follows a five-step sequential evaluation process to determine whether a claimant is disabled. *See Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010). The claimant bears the burden of establishing a prima facie case of disability at steps one through four. *See id.* If the claimant successfully meets this burden, the burden of proof shifts to the Commissioner at step five to show the claimant retains sufficient RFC to perform work in the national economy, given her age, education and work experience. *See id.*

At step four, the ALJ determined Ms. Shiplett retained the RFC to perform sedentary work "except she can occasionally bend forward at the waist, occasionally bend at knees to come to rest on her knees, and occasionally bend downward by bending legs and spine." Aplt. App. at 15. He then found this RFC

allowed her to return to her past relevant work as a radio dispatcher and that she was therefore not disabled. The Appeals Council denied review, making the ALJ's decision the Commissioner's final decision. The district court subsequently affirmed, adopting the magistrate judge's recommendation to affirm the ALJ's decision because it was supported by substantial evidence and the correct legal standards were applied. Ms. Shiplett appealed.

"Our review of the district court's ruling in a social security case is de novo." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). "Thus, we independently determine whether the ALJ's decision is free from legal error and supported by substantial evidence." *Id.* (quotation marks omitted). "Although we will not reweigh the evidence or retry the case, we meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* (quotation marks omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *See Raymond v. Astrue*, 621 F.3d 1269, 1271-72 (10th Cir. 2009) (quotation omitted).

The ALJ's decision references numerous medical records, but he appears to rest his RFC finding on three evidentiary considerations. The first consideration is an August 26, 1999, work release signed by Brent Hisey, M.D., a physician at Neuroscience Specialists, who treated Ms. Shiplett from December 1997 through

October 9, 2002. The ALJ read the record as "releas[ing Ms. Shiplett] to return to work of not lifting over 10 pounds on August 30, 1999[.]" Aplt. App. at 20. The second consideration is a July 9, 2003, functional capacity evaluation (FCE) performed by an occupational therapist at the request of A. E. Moorad, M.D., a physician with Southwest Rehabilitation and Occupational Medicine, who treated Ms. Shiplett from November 2002 through March 2008. The ALJ read that record as finding Ms. Shiplett "able to perform light work on July 9, 2003[.]" *Id*. The third consideration was the ALJ's conclusion that "the above [RFC] assessment is supported by the fact that claimant has not had any permanent limitations or restrictions placed on her ability to perform basic work activities by any treating or examining physicians[,]" Aplt. App. at 20. Ms. Shiplett's appellate arguments focus on the ALJ's treatment of these three considerations.

Ms. Shiplett first argues the ALJ mischaracterized Dr. Hisey's authorization to return to work "as a blanket authorization to return to work on August 30, 1999 with a 10 pound weight restriction[.]" Aplt. Opening Br. at 16. Ms. Shiplett's 1997 injury occurred while she was working as a school custodian. On August 26, 1999, Dr. Hisey signed a "**RELEASE TO RETURN TO WORK.**" Aplt. App. at 346. In it, Dr. Hisey released Ms. Shiplett to return to work on August 30, 1999. The release form offers two options to the preparer in regard to "WORK DUTIES." The preparer may circle either "[f]ull work requirements" or "[l]imited duty[.]" *Id*. Dr. Hisey circled "[l]imited duty." The form then allows

the preparer to list any "RESTRICTIONS" on the employee's ability to work. Dr. Hisey wrote "no lifting over 10 lbs." *Id.* Ms. Shiplett argues the ALJ ignored the "[l]imited duty" notation. Aplt. Opening Br. at 17. But this assumes the term "[l]imited duty" includes more limitations than the restriction on lifting over ten pounds. Ms. Shiplett points to nothing in the record showing that to be the case; nor does she make any argument as to why Dr. Hisey would not have listed any additional restrictions.

Ms. Shiplett next points out a notation at the bottom of the work release stating: "NOT ABLE TO ACCOMMODATE MS. SHIPLETT'S RESTRICTIONS AT THIS TIME." *See* Aplt. App. at 346. The notation is followed by the letters "JKW." *Id.* In his brief, the Commissioner surmises "JKW" to represent the initials of J. Kirk Webster, who was the Superintendent of the Davis, Oklahoma public schools. Aplt. App. at 343. The Commissioner directs our attention to a letter from Mr. Webster informing Ms. Shiplett the school district did not have any custodial positions able to accommodate Dr. Hisey's work restriction.[1] *Id.* The fact the school district did not have any suitable custodial positions has no relevance to the propriety of the ALJ's RFC assessment.

Ms. Shiplett also argues the ALJ erred in failing to note Dr. Hisey's conclusion during an October 9, 2002, visit that Ms. Shiplett had experienced "a change in condition for the worse." Aplt. App. at 241. She also complains

---

[1]    At the time of her injury, Ms. Shiplett was working as a school custodian.

-5-

the ALJ ignored Dr. Moorad's records showing he considered Ms. Shiplett

"still TTD" (temporarily totally disabled) on both December 9, 2002, *see id*. at

316, and February 18, 2003, *id*. at 312.[2]

But, as the Commissioner notes, Dr. Moorad's records show Ms. Shiplett's

condition improved after his TTD determinations.  For example, the record for

June 24, 2003, shows that:  he thought she had "better color, better flexibility,

better range of motion"; she was "improving" and "doing remarkably better"; and

they would "need to see what her functional level is and what to do about the

future, jobs, etc.[,]" suggesting he did not necessarily view her as permanently

disabled at that time.  *Id*. at 306.  Dr. Moorad then arranged for Ms. Shiplett to

undergo an FCE.

Which brings us to Ms. Shiplett's argument that the ALJ mischaracterized

the July 9, 2003, FCE.  The ALJ determined the FCE "found [Ms. Shiplett] to be

able to perform light work on July 9, 2003."[3]  *Id*. at 20.  Ms. Shiplett first argues

---

[2]    In fact, the December 9, 2002, record shows Dr. Moorad considered
Ms. Shiplett "still TTD" when he saw her on November 18, 2002.  Aplt. App.
at 316.

[3]    Sedentary work involves lifting no more than 10 pounds at a time
and occasionally lifting or carrying articles like docket files, ledgers,
and small tools.  Although a sedentary job is defined as one which
involves sitting, a certain amount of walking and standing is often
necessary in carrying out job duties.  Jobs are sedentary if walking
and standing are required occasionally and other sedentary criteria
are met.

(continued...)

-6-

such a characterization was incorrect because it ignores the FCE's determinations that she was "[u]nable to complete the 3.25-hour evaluation without added rest period(s)[,]" Aplt. App. at 334 (emphasis omitted), and that "[i]t is difficult to predict whether the client is capable of sustaining the light level of work for an 8-hour day." Aplt. App. at 334 (emphasis omitted). The Commissioner argues the FCE's failure to affirmatively conclude Ms. Shiplett could sustain a light work level for a full day, much less an entire work week, provides little insight into whether she could sustain a *sedentary* level of work for a full work week. The Commissioner is correct.

Ms. Shiplett bore the burden of establishing a prima facie case of disability at steps one through four. *See Wilson*, 602 F.3d at 1139. As noted above, the ALJ stated: "the above [RFC] assessment is supported by the fact that claimant

---

[3](...continued)
20 C.F.R. § 404.1567(a).

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

has not had any permanent limitations or restrictions placed on her ability to perform basic work activities by any treating or examining physicians." Aplt. App. at 20. Here, Ms. Shiplett failed to show she is not able to perform sedentary work for an eight-hour day.

Ms. Shiplett also argues the ALJ also ignored certain specific language from the records of Drs. Hisey and Moorad:

Dr. Hisey:

> 1. September 22, 2000—"it does appear she has a failed back syndrome." Aplt. App. at 244.
>
> 2. May 2, 2001—"she is a better candidate for chronic narcotic pain management than for further surgical treatment." *Id*. at 242.
>
> 3. October 9, 2002—"I feel that she has had a change in condition for the worse." *Id*. at 241.

Dr. Moorad:

> 1. November 18, 2002—"continued treatment with Dr. Hisey and continued to require a lot of pain medications and never was able to return back to work." *Id*. at 318.
>
> 2. May 11, 2004—"unable to get her off of Methadone fully." *Id*. at 298.
>
> 3. September 20, 2004—"trying hard . . . to get her off the Methadone completely." *Id*. at 296.
>
> 4. September 26, 2005—"told her she has a chronic problem with chronic pain and I have no cure. She will have to learn how to cope with the pain and do the best she can." *Id*. at 290.
>
> 5. March 10, 2008—Assessment that patient "needs ongoing pain management in the form of maintenance every three months in order

to control her chronic pain stemming from her failed back syndrome, status-post fusion." *Id.* at 353.

6. March 10, 2008—"I am seeing this patient now ever three months in order to maintain a good degree of functionality and a reasonable degree of pain control." *Id.* at 352.

As to Dr. Hisey's opinion regarding Ms. Shiplett's failed-back syndrome, the decision does not mention this syndrome when reviewing Dr. Hisey's records, but "failed back syndrome" is noted three different times in the ALJ's review of Dr. Moorad's notes. *See id.* at 17, 18, 19. The ALJ also specifically noted Dr. Hisey's conclusion that Ms. Shiplett was a "better candidate for chronic narcotic pain management than for further surgical treatment." *Id.* at 17. The first statement by Dr. Moorad is simply a statement concerning the history of Ms. Shiplett's case. It is not a medical opinion that Ms. Shiplett does not have the functional capabilities to perform sedentary work with the restrictions stated in the ALJ's RFC. Further, the remainder of the statements come from records made after December 31, 2002, the date Ms. Shiplett last met the insured status requirements of the Social Security Act. While they show she continued to experience pain, neither they, nor any of these statements, contradict the ALJ's RFC assessment. *See Wall v. Astrue*, 561 F.3d 1048, 1069 (10th Cir. 2009) (holding that when "the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's [RFC], the need for express analysis is weakened" (quotation omitted)). In fact, as a whole, they show

continued improvement. Further, while the regulations require the ALJ to "consider all evidence in [the] case record when [he] makes a determination or decision whether [claimant is] disabled," 20 C.F.R. § 404.1520(a)(3), and we require the ALJ to discuss "the significantly probative evidence he rejects[,]" *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996), the ALJ is "not required to discuss every piece of evidence," *id*. at 1009-10. None of these statements qualify as "significantly probative" evidence rejected by the ALJ.

Ms. Shiplett also raises a number of other brief arguments. She argues the ALJ failed to evaluate the opinions of Drs. Hisey and Moorad using the factors in *Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288 (10th Cir. 1995). The factors she refers to are considered when an ALJ is determining the weight to accord a certain medical opinion. Here, analysis of the factors in not necessary because the dispute is not over the relative weight the ALJ accorded the opinions of these physicians compared to other record evidence, it is with the ALJ's interpretation of the content of those opinions.

Ms. Shiplett also contends the ALJ: (1) failed to give proper consideration to a Social Security Administration employee's observations that Ms. Shiplett had difficulty sitting, standing, and walking; she moved around in her chair a lot; and she had a hard time remembering dates and places she had been; (2) failed to recognize Ms. Shiplett had a exemplary work record before being injured; and (3) failed to give proper consideration to her repeated attempts to find relief from

pain. It is clear Ms. Shiplett has serious chronic back pain that has required long-term treatment. But this evidence does not show she met her burden of proving she could not perform her past relevant work. The question is whether substantial evidence supports the ALJ's RFC determination, and whether the ALJ followed the relevant legal standards in reaching that determination. Here, we answer yes to both of those questions. The ALJ's decision contained a lengthy discussion of the medical evidence and the evidence presented by the ALJ in support of his RFC determination is such that "a reasonable mind might accept [it] as adequate to support" that determination. *Raymond*, 621 F.3d at 1271.

Thus, the judgment of the district court is AFFIRMED.

Entered for the Court


Wade Brorby
Senior Circuit Judge